IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRANDI ODOM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 06-0511-WS-C |
| | ) |
| MOBILE INFIRMARY a/k/a | ) |
| INFIRMARY HEALTH SYSTEMS, | ) |
| | ) |
| Defendant. | ) |

ORDER

This matter comes before the Court on the Motion in Limine of Defendant Mobile Infirmary Medical Center (doc. 65).  The Motion has been briefed and is ripe for disposition at this time.[1]  In the Motion, defendant advances a trio of evidentiary objections, each of which will be addressed in turn.

1.   Use of the Term "Harassment."

First, defendant Mobile Infirmary requests that plaintiff Brandi Odom be barred from characterizing the screensaver at issue in this case as "harassing" or "harassment" on the grounds that plaintiff's Title VII racial harassment claim has been dismissed and is no longer part of this case.  Contrary to the Motion, the Court does not perceive any material risk that stray references at trial to "harassment" will prejudice the defendant or confuse the jury into believing that there is a Title VII harassment claim in play.  Certainly, the Court anticipates that counsel's opening statements and closing arguments will delineate for the jury precisely which claims are before them.  The jury instructions will do the same, identifying those claims in great detail.  In light of these instructions and information sources, there is no reasonable likelihood that the jury will be

---

[1] Also pending is plaintiff's Motion to File Brief Out of Time (doc. 68), which was filed two days after the deadline established by this Court for plaintiff's response.  For cause shown and in light of the brevity of the delay and defense counsel's lack of objection, the Motion to File Brief Out of Time is **granted** and plaintiff's Response (doc. 69) will be considered notwithstanding its untimeliness.

deceived by sporadic use of the term "harassment" in characterizing evidence or events in this case into believing that they are being asked to decide a racial harassment claim. Furthermore, the jury will be charged that as part of her Title VII retaliation claim, Odom must establish that she engaged in good-faith protected activity, which in this case would be her internal complaints of racial harassment. To preclude Odom from using the term "harassment" would be to impede her efforts to demonstrate protected activity and good faith. This case is not about harassment, but plaintiff must establish that she made good-faith complaints about racial harassment in order to prevail on her retaliation cause of action; therefore, it would be entirely proper for plaintiff to use the term "harassment" in meeting her burden of proving retaliation. Finally, plaintiff's counsel asserts that he "will admonish Plaintiff that there is no harassment claim and to encourage her to use her full lexicon in describing the screen-saver - except for 'harass' in any of its forms." (Doc. 69, ¶ 1.) In light of the foregoing, the undersigned concludes that an across-the-board ban on the terms "harass" or "harassment" would be inappropriate and unwarranted in this case. Defendant's Motion in Limine is **denied** on this basis; provided, however, that defendant may renew the objection if plaintiff emphasizes alleged "harassment" to such an extreme degree that it might reasonably engender confusion for the jury as to the nature of the claims at issue in this case.

### 2. Compensatory Damages for Which No Documents Exist.

Second, defendant balks that plaintiff should be precluded from introducing evidence concerning certain types of compensatory damages, specifically those relating to claims for job search, rent, moving, furniture, retirement benefits, and student loans. With respect to plaintiff's job search, rent, moving and furniture expenses, defendant protests that Odom has produced no documentation relating to any of these items, and that she should therefore be prohibited from presenting "conclusory testimony" to the jury about them. In response, plaintiff asserts that "if no documents were produced on a specific damage, it was because she had no documents." (Doc. 69, ¶ 2.) Absent evidence of spoliation (which is not suggested to have occurred here), this Court will not penalize a party for failing to produce documents it does not have. This is not a situation in which the plaintiff has withheld production of documents that she now seeks to introduce into evidence at trial. To the contrary, plaintiff's uncontroverted position is that the documents simply do not exist. The Court is aware of no legal principle, whether encapsulated

in the Federal Rules of Evidence or otherwise, that requires a plaintiff to prove compensatory damages via documentary evidence rather than live testimony.  Certainly, a plaintiff's own testimony concerning her out-of-pocket expenses is competent evidence of damages, even in the absence of receipts or other back-up documentation.[2]  As to these categories of damages, the Motion in Limine is **denied**.

In the Joint Pretrial Document (doc. 62), plaintiff also identified as compensatory damages lost 401(k) benefits in the amount of $29,160; however, in support of that claim, Odom produced a document showing that Mobile Infirmary contributed just $1,589.85 to her retirement plan since its inception.  On that basis, defendant maintains that there is no evidence to support plaintiff's claim of $29,000 in lost retirement benefits, and therefore seeks to foreclose plaintiff from testifying to that effect at trial.  Again, nothing in the rules governing the trial of this cause would oblige a plaintiff to prove up her damages by documentary evidence rather than live testimony.  If Odom is prepared to offer live testimony to create an evidentiary basis for her claim of $29,160 in lost retirement benefits, the lack of supporting documentation would not preclude her from doing so.[3]  As to lost retirement benefits, then, the Motion in Limine is **denied**.

Defendant also seeks to restrict plaintiff from putting on evidence of compensatory damages related to unpaid student loans.  Defendant's point with respect to student loans is that Mobile Infirmary's Tuition Reimbursement Program provided for reimbursement solely of "tuition paid," not all educational loans.  On that basis, defendant would prevent plaintiff from putting on evidence of other educational expenses and loans beyond the realm of "tuition paid."  Plaintiff's response is that she does not intend to submit evidence of educational loans beyond

---

[2]  That said, the lack of any such receipts or back-up could undoubtedly provide fertile ground for cross-examination concerning the accuracy and veracity of the plaintiff's testimony on this point.  Nothing in this Order forbids or in any way trammels defendant's right to cross-examine plaintiff vigorously on the topic of damages.

[3]  If plaintiff so testifies at trial, of course, defendant will be free to cross-examine her using the document attached to the Motion as Exhibit B to show that plaintiff's claim of $29,160 in lost retirement benefits is grossly inflated given that Mobile Infirmary contributed less than $1,600 to her retirement account during her employment there.

those which Mobile Infirmary had agreed to repay.[4]  Plaintiff also states that she intends to put on live testimony that she has incurred additional interest payments relating to those educational loans because of Mobile Infirmary's failure to pay them.  The Court will not bar Odom from presenting evidence (via her testimony or otherwise) of educational loans that she claims Mobile Infirmary had agreed to repay, or of interest payments that she contends accrued against her because of its failure to make good on such payment obligations.  Mobile Infirmary is of course free to argue that it did not agree to repay certain of those loans, that interest payments should not be included, and the like.  There being no indication and no reason to believe that Odom intends to put on evidence of educational expenses and loans that she concedes Mobile Infirmary did not agree to reimburse, the Motion in Limine is **denied**.  It is for the jury to decide ultimately which educational expenses defendant agreed to pay and the extent, if any, to which defendant should be held responsible for them.

   **3.**  **Plaintiff's Back Pay Claim.**

Finally, Mobile Infirmary's Motion in Limine seeks to exclude evidence and argument concerning Odom's claim for $30,175 in back pay.  According to Mobile Infirmary, plaintiff has no evidence that she suffered a loss of back pay at all, inasmuch as her W-2 earnings in the years after she left Mobile Infirmary's employ substantially exceeded those in the years when she was working for Mobile Infirmary.  The record indeed reflects that Odom has earned more income in 2006 and 2007 than she did in 2005 (the last year in which she worked for Mobile Infirmary).  (*See* doc. 66, at Exh. D.)[5]

The problem with defendant's argument is that it is not an apples-to-apples comparison.  Defendant's Exhibit D does not reflect what plaintiff's base salary for Mobile Infirmary was in

---

   [4]  From the carefully chosen verbiage in plaintiff's response, the Court surmises that there may be some disagreement between the parties as to which categories of education loans Mobile Infirmary agreed to reimburse for Odom.  The parties' differing interpretations of this exhibit or their differing recollections as to what was or was not promised to Odom by Mobile Infirmary are not appropriate subjects for a motion in limine.  Each party will be allowed to argue its view of the tuition-reimbursement agreement to the jury at trial.

   [5]  In particular, the tax documents submitted by Mobile Infirmary reflect that plaintiff earned approximately $103,000 in 2005, but that her earnings rose to $116,339 in 2006 and $111,437 in 2007.

2005, or what it would have been in 2006 and 2007 had she remained there.  Nor is it possible to discern from Exhibit D the extent to which Odom would have earned income from other entities (*e.g.*, her work as a Wal-Mart pharmacist, for which she was paid $29,000 in 2005, $19,000 in 2006, and just $323 in 2007) while employed by Mobile Infirmary, or whether it was an either-or proposition.  Stated differently, was the Wal-Mart pharmacist work a side job that Odom could and would have worked had she remained at Mobile Infirmary, or was it a job that she took on in lieu of the Mobile Infirmary work?  That and many other questions must be answered in order to pin down whether and to what extent plaintiff suffered lost wages by virtue of her dismissal from Mobile Infirmary.  Finally, it is evident that defendant's figures are inflated by the inclusion of income that is not wage and salary income.  Most notably, included in defendant's calculation that plaintiff earned $111,000 in 2007 is a distribution of $17,499.63 in retirement benefits from Valic Retirement Services Co., as reported on a Form 1099, not a W-2.  On its face, this Valic payout does not appear to be wage and salary income, and therefore is not properly included in any wage comparisons for back pay purposes.  Subtracting out the Valic 1099 funds, Odom's W-2 income in 2007 appears lower than her 2005 income, according to defendant's own Exhibit D.

   The bottom line is this: Defendant asks the Court to assume based on fragmentary, incomplete evidence that plaintiff has earned more money since being laid off from Mobile Infirmary than she would have earned had she remained at Mobile Infirmary.  The Court cannot so conclude without indulging in guesswork and speculation concerning what the evidence will show at trial.  Plaintiff is entitled to put on evidence of her damages, and defendant is entitled to controvert that evidence.  By all appearances, a jury question is presented as to whether and to what extent Odom suffered a loss in wages after leaving Mobile Infirmary's employ.  On this issue, too, the Motion in Limine is not well taken.[6]

---

   [6] In so finding, the Court does not embrace plaintiff's argument that her back pay claim has merit because the jobs she worked after leaving Mobile Infirmary lacked benefits.  Lost benefits are a separate line item in plaintiff's damage calculations, and defendant's back pay argument is confined to the $30,750 in back wages claimed, not, for example, the $8,000 in health and dental insurance benefits sought by Odom.  Stated differently, whether Odom's temporary jobs did or did not offer benefits is irrelevant to her claim for back wages because lost benefits is a separate category of claimed damages.

**4.	Conclusion.**

For all of the foregoing reasons, Defendant's Motion in Limine (doc. 65) is **denied**.

DONE and ORDERED this 20th day of May, 2008.

                                        s/ WILLIAM H. STEELE                    
                                        UNITED STATES DISTRICT JUDGE